## POLLY FAVOR *vs.* J. PHILBRICK.

In assumpsit, the consideration of the promise must be stated truly; and if more or less than is proved, is stated, the variance is fatal;—but in stating the promise, it is sufficient to state those parts only for the breach of which the action is brought,·provided the parts omitted do not vary or qualify the parts stated.

In an action brought for the breach of a promise by the defendant, to carry an account of the plaintiff against a third person to an attorney to be put in suit, the defendant is not entitled to try with the plaintiff the question whether any thing was in fact due upon the account.

A contract by a mail carrier, made under a misapprehension of the parties as to the true meaning of the statute regulating the post-office establishment, and without any intended fraud upon the post-office, to carry and deliver a letter in a manner prohibited by the statute, is not void, if the letter could have been delivered in any way by the mail carrier, so as to have answered all the purposes which he who sent it had in view, without any violation of the statute.

ASSUMPSIT. It was alleged in the declaration that the defendant, on the third day of February, 1823, in consideration that the plaintiff had delivered to the defendant, at his request, a certain account due to the plaintiff from one Charles Greenfield, for the sum of $7 50, to be carried by the defendant from Windsor to Henniker, and delivered to one Artemas Rogers, and paid to the defendant 6¼ cents for his trouble, promised the plaintiff to carry and deliver the same accordingly—and that the defendant neglected to carry and deliver the same, by means of which negligence the debt was barred by the statute of limitations, and lost.

At the trial here, at February term, 1834, it appeared in evidence that at the time specified in the declaration, one Nehemiah Jones, as agent of the plaintiff, applied to the defendant, who was then a mail carrier, and on his route from Charlestown to Concord, and stated to him that the plaintiff had left an account against said Greenfield, to be sent to said Rogers, who was an attorney at law in Henniker: That the account was almost outlawed, and he wished the defend-

ant to carry it to Rogers himself, and not leave it with any other person. Said Jones told the defendant that he had written to Rogers, and put the account in the letter, and had not sealed it, so that he might carry it by the post-office. The defendant received the letter, and agreed to deliver it for the sum of $6\frac{1}{4}$ cents, which was paid to him by Jones at the time.

It was further in evidence, that the defendant afterwards admitted that he received the account and line from said Jones, with the directions as before stated, and that the letter contained instructions to Rogers to sue the account.

It further appeared, that neither the letter nor the account had ever been received by said Rogers, in consequence of which the account became barred by the statute of limitations.

Upon this evidence, the defendant moved for a nonsuit on account of an alleged variance between the evidence and the declaration, in that the declaration alleged a contract to carry and deliver an account, whereas the evidence was that the defendant contracted to carry and deliver a letter containing an account ; but the court overruled the objection.

The defendant further objected, that the action could not be supported, because

1. There was no proof of the contents of the letter, or of its superscription.

2. In small errands of this character undertaken for a small reward, the party undertaking cannot be charged for negligence ; but is only liable in case of his dishonesty.

3. The account was a mere paper of no value.

4. The defendant was a mail-carrier then riding upon his route, and a contract to carry to Henniker from Windsor, being by the post-office in Hillsborough, was illegal and void.

5. The account was never due, or if due, had been paid ; or if due at the time, Greenfield was poor and unable to pay ;

and in order to shew these facts, he introduced the testimony of several witnesses.

The court instructed the jury, that it was not necessary in this case to prove the superscription of the letter or its contents ; that the proof of what was communicated to the defendant as to its object was sufficient in this respect ; that the consideration being small, made no difference ; it was a legal consideration, and such as would bind a party to perform whatever he lawfully undertook ; that a party making a contract to do an errand, and on a small compensation, if the contract was fair was bound to perform it, as in any other case of a contract ; that there might be a value connected with this account and its delivery to Mr Rogers, and that although not valuable for sale it might be valuable to the plaintiff for the purpose for which it was sent, and that the same rules of law applied as if it was an article of merchandize ; that although the defendant was a mail-carrier, if he undertook for a reward to carry the account, he was bound to all he could lawfully do in the performance of it, and that if he could not legally carry the letter to Rogers, he might have put it in the mail at the next post-office, or, being unsealed, he might have taken out the account, and leaving the letter behind, have delivered the account, with the message, to Rogers ; and that he was bound to have done one of these, or to have returned the papers to Jones ; and that if he had done neither, he could not defend this action on account of illegality in the contract.

The jury were farther directed, that the poverty of Greenfield was not a defence to the action ; that if the account was due, the plaintiff had a right to obtain judgment, to prevent its being outlawed, and to attempt to collect it ; and that this would only go to reduce the damages ; that if there was no debt due from Greenfield to the plaintiff it would be a good defence ; but, to constitute a defence, it must be shown with great certainty that nothing was due ; for if it was doubtful, the plaintiff had a right to try the question in an action against Greenfield.

The jury returned a verdict for the plaintiff, and the defendant moved the court to grant a new trial.

*C. H. Atherton*, for the defendant. The declaration is upon a contract to deliver an account. The contract proved was to deliver a letter containing an account. The contracts are different. The delivery of the letter would be no performance. So the delivery of the account would be no performance. One was essential to the other. The account without the letter would answer no purpose. So the delivery of the letter without the account would have been idle. The instructions contained in the letter were essential to make the delivery of the account of any use. It would be no answer to an action for not delivering the letter containing the account, that he had delivered either the letter or the account. If the contract had been in the disjunctive, to deliver a letter or an account, a declaration for not delivering an account could not have been supported. So if a contract be to buy two horses, or a horse and chaise, you cannot count for not buying one horse, or for not buying a chaise. 1 *Campbell* 361, *Symonds* vs. *Carr ;* 5 *Espin. N. P. Cases,* 239 ; 2 *East* 2, *Penny* vs. *Porter ;* 3 *Wend.* 374, *Stone* vs. *Knowlton ;* 2 *Esp. N. P. Cases* 707, *Harrison* vs. *Wilson ;* 15 *Petersdorf's Ab.* 197.

The transaction, in the most favorable view of it to the plaintiff, was a bailment for hire, which bound the bailee to respond in case of failure through his want of ordinary care. The defence set up was, that the defendant acted honestly, and made reasonable and proper efforts to perform his contract, and that the failure was accidental, without any fault on his part. It is, therefore, respectfully submitted, whether the direction to the jury that the defendant was bound to perform, as in other cases of contract, was not erroneous.

This was not a question of absolute performance, but of the exercise of ordinary care to perform. This was in law the contract. The defendant did not pretend that there was

an absolute performance; but that he had taken due pains and care to perform. The direction drew the attention of the jury from the point of the defence. It was not, and could not be, under the instructions, considered at all. As the bailment was proved, the directions should have been on the question of due care to perform. The instruction placed him in the condition of a common carrier, liable at all events. It overlooked the distinction between the responsibility of a bailee for hire, and of a common carrier. But the merits of this case lay in that direction.

It is impossible to lay down rules applicable to all times, and under all circumstances. The responsibility of the bailee must be judged of by what is the actual state of society, the habits of business, and the general usages of life. *Story on Bailment*, 9. The defendant contends that it is the habit, usage and understanding of the country, that in these small errands the bailor takes on himself all the responsibility, except the honesty of the bailee. The plaintiff, to sustain her action, was bound to show dishonesty in the defendant, or that gross negligence which is its equivalent.

It was essential to the plaintiff's cause, that the account should be of value; that it should be due. The charge to the jury was in this respect erroneous. The defendant was required to prove the negative with perfect clearness. The defendant cannot conceive why he should be held to a degree of proof unknown in civil causes, or why the same proof on which credits are usually founded, that is, the balance of evidence, should not have been sufficient. If the jury had been permitted to weigh the evidence, and strike the balance, it would, as he contends, have been against the account.

By the statute of the United States regulating the post-office establishment, passed April 30, 1810, section 17, the mail-carrier shall deliver any letter he has received, at the first post-office at which he shall arrive, in order that the

same may be duly entered, and the postage secured. The 18th section enacts, that if any person concerned in carrying the mail shall receive or carry any letter or packet contrary to the act, he shall forfeit $50. This was a contract to carry a letter, or rather a double letter, containing an account, by the Hillsborough post-office, and to defraud the revenue. It was founded on illegality. The plaintiff saved three cents by the contract, the defendant gained five cents, and the United States lost eight cents. Not only contracts founded in illegality, but contracts having a tendency to encourage unlawful acts or omissions, are void. 17 *Mass. R.* 258, *Wheeler* vs. *Russell*; 4 *N. H. R.* 285. This letter, containing an account, was not a packet or bundle. 1 *Pickering*, 50.

But the case shows that the jury were directed, that if the defendant could not legally carry the letter to Rogers, he should have put it into the next post-office, or should have opened the letter and taken out the account, leaving the letter, and have delivered the account, with a message similar to the contents of the letter, instead of the letter. The contract was illegal in its terms, and in the meaning of the parties. This being the case, why should the court devise means by which the object might have been lawfully effected, to save the party from the consequences of an illegal contract? Putting the letter into the post-office would have been a violation of the contract. It would not have been delivering it to Rogers. It would have been precisely what the parties intended to avoid. It would have been more expensive to the plaintiff and less profitable to the defendant.

The defendant had no charge, nor was he under any obligation to deliver to Rogers a verbal message. Substituting this for the letter would have been a violation of the terms of the contract. The post-office laws prohibit, under severe penalties, the opening of letters, the leaving, secreting, or embezzling of them. I suppose the immorality and ille-

gality of opening an unsealed letter to be the same as the opening of a sealed letter. If it be a folded letter, that is enough to secure its privacy in the civilized world, among all honorable men. It requires no more physical strength to open a sealed than an unsealed letter. It is not the fastening, it is the usage and the moral principle growing out of it, that gives the security. It should not be weakened by any recommendation to violate it. Could the plaintiff have declared, on a contract under this evidence, that the defendant should do what it is said he ought to have done, in order to comply with the contract legally?

If he could not, it was because such was not the legal contract, for all contracts may be declared on according to their legal effect. The taking back of the letter and account would have been a violation of the contract, and illegal in a mail carrier. If the contract had been to deliver or return, the declaration would not be supported, not being in the alternative. The amount of the whole seems to be that neither party should have made the contract they did, because it was illegal. In such cases, a court of law gives aid to neither party.

If, because a mail-carrier might have conducted lawfully with a letter, notwithstanding his contract to do otherwise, the contract is thereby legalized, then in no case can a mail-carrier make an unlawful contract to carry a letter. In this view of the case, all persons are invited to make contracts with mail carriers in violation of the laws of the United States. Such contracts are valid, because the mail-carrier ought not to violate the law, notwithstanding the inducements of his contract so to do. Can such reasoning be sustained?

*Farley,* for the plaintiff.

RICHARDSON, C. J. delivered the opinion of the court.
It is said in this case that there is a material variance be-

tween the allegations in the declaration, and the proof. The declaration sets out a contract to carry and deliver an account, while the evidence proves a contract to carry and deliver a letter containing an account. The question is, whether this is a material variance?

It is stated in the case that the defendant had notice, when the letter was delivered to him, that it contained an account, so that an agreement to carry the letter may well enough be considered as a contract to carry the letter and the account. And the rule of law is, that in stating the consideration of a contract, the whole must be stated truly ; and if more or less than is proved is stated in the declaration, the variance is fatal. But in stating the promise, it is sufficient to state those parts only for the breach of which the action is brought, provided the parts omitted do not vary or qualify the parts stated. 1 *Chitty's Pl.* 299—300 ; 8 *East* 7, *Miles* vs. *Sheward* ; 6 *East* 564, *Clarke* vs. *Gray* ; 3 *Stark. Ev.* 1564 ; 8 *Cowen* 36 ; 1 *Saund.* 233, *note* (2.)

This action is brought on the contract to deliver the account ; and the circumstance that the account was sent in a letter is wholly immaterial. It neither varies nor in any way qualifies the contract to carry the account.

The cases cited to sustain this point in the defence do not apply. In *Harrison* vs. *Wilson*, 2 *Espin.* 107, the agreement on the part of the plaintiff to take in a full cargo must have been the consideration of the promise on which the action was founded. That case is, then, in perfect accordance with the rules above stated. In *Symonds* vs. *Carr*, 1 *Campbell* 361, the variance was in the contract stated as the consideration of the promise.

In *Penny* vs. *Porter*, 2 *East* 2, the action was case for the non-delivery of wheat according to agreement. The contract stated in the declaration was that the defendant should deliver forty bags immediately. The contract proved was that he should deliver forty or fifty bags immediately. The contract stated was not, therefore, proved.

In *Clarke* vs. *Marstone*, 5 *Esp.* 238, the objection was, that the contract stated was not proved.

There is nothing in any of these cases at all inconsistent with the rule that in stating the promise it is sufficient to state those parts only for the breach of which the action is brought.

It has been said in the argument, that the delivery of the account without the letter would have answered no purpose. This may be true. But it must be recollected, that as the account was not delivered, the non-delivery of the letter became of no importance. The plaintiff may then well consider the non-delivery of the account as the cause of all the damages she has sustained.

It is further said, in this case, that the jury were misdirected in this,—that they were told that to constitute a defence, it must be shown with great certainty, that the account had been paid, or that nothing was due.

But what right had this defendant to try that question at all? He had contracted and received a compensation to carry and deliver the account to Rogers. What concern has he with the question whether any thing was due on the account? Could he by a violation of his own contract compel the plaintiff to try with him the question whether any thing was due on the account? It is very strange if he can. The only mistake that is perceived in this part of the charge to the jury is, that it should have been left to the jury to say whether any thing was due on the account.

It is further said, in this case, that the defendant was a mere bailee for hire, which bound him to respond only in case of failure to perform his contract through his want of ordinary care; and that the direction to the jury that he was bound to perform his contract as in other cases, was erroneous, as it placed him on the ground of a common carrier, and overlooked the distinction between a common carrier and a bailee for hire.

It may be conceded that the defendant was a mere hired

servant in the transaction, and not a common carrier. But how the direction to the jury, which has been just mentioned, can be supposed to have placed him on the ground of a common carrier, is not perceived. Every man is bound to perform his contract. A mere hired servant is as much bound to perform his contract as a common carrier. But the contract he makes may be very different. A common carrier not only contracts to carry the goods, but to insure their safe delivery, unless in cases of inevitable accident. A hired servant only contracts to carry. He is no insurer. He only stipulates to use ordinary care and diligence. The difference is in the contract itself, and not in the obligation to perform what is agreed to be done. Common carriers and bailees for hire are in these cases equally bound to perform their contracts.

When the plaintiff had shown that the defendant took the account, under the agreement to deliver it to Rogers, and that it had never been delivered, this was enough, prima facie, to sustain the action. If there was any legal excuse for the non-performance of the contract, that was matter of defence. The plaintiff was not bound to show any other negligence, to sustain the action. And until some excuse was offered by the defendant, it was wholly immaterial whether the defendant was to be considered as a common carrier, or the mere hired servant of the plaintiff in the transaction. If the contract was broken, the plaintiff was entitled to recover his damages, whether the defendant was the insurer of the safe delivery of the account or not. He had contracted to carry the letter for hire, and had not performed what he had undertaken to do. No question seems to have arisen as to the extent of his responsibility, whether it was that of a common carrier or that of a hired servant. It does not appear in the case stated that the defendant offered any excuse whatever for the non-performance of the contract.

But the case states that it was contended by the defend-

ant's counsel, that in small errands, undertaken for a small compensation, the party cannot be charged for negligence, but is only liable in case of his dishonesty. And it is to be inferred, from the manner in which the case is stated, that the ground taken by counsel was that the defendant was not liable, because there was no evidence of dishonesty. In answer to this ground of defence, the judge who tried the cause seems to have told the jury that in a case of this kind the defendant was bound to perform his contract, as in any other case of a contract. This did not place the defendant on the ground of a common carrier, who is liable at all events. It only placed him on the ground on which every man who makes a contract is placed. It was only saying to the jury, that as the defendant had contracted to carry the letter for hire, and had failed to perform his contract, he must be held liable unless he could show some legal excuse. It was only applying to the case the general rule. And we are not aware of any solid ground on which this case can be held to form an exception to the general rule. No case has been cited, in which such an exception has ever been recognized. This was the case of a small errand undertaken for a small reward, it is true—but it was a contract, which, if legal, the defendant was bound to perform—a contract that could not be wantonly broken without a violation of truth, probity, and justice—in fact, without dishonesty. We are, therefore, of opinion that the direction given to the jury was right.

But it is further insisted, that the contract was illegal,— the defendant being a mail-carrier, and having no right to carry an account in the manner this account was sent. It is said that the statute of the United States prohibited the contract which was made between these parties.

But it seems to me, that upon a fair construction of the 16th, 17th, and 18th sections of the statute, a mail-carrier was not prohibited from carrying a letter relating to a package sent by him. And any letter sent with a package is

presumed to relate to the package, until the contrary appears. 1 *Pickering* 50, *Dwight* vs. *Brewster* ; 1 *B. & A.* 461, *Bennett* vs. *Clough.*

And however that may be, we are all of opinion that the contract in this case was not, under the circumstances, void.

A promise founded upon an illegal consideration, is void. But in this case the consideration was legal. And in general a contract to do an illegal act, although founded on a lawful consideration, is void. And the objection to the contract in this case is, that it was a contract to do an unlawful act.

The 17th section of the statute regulating the post-office establishment, makes it the duty of the post-riders to receive way-letters, (if presented more than two miles from a post-office) and to deliver them, together with the postage, if paid, at the first post-office at which they shall arrive.

And the 18th section enacts, that if any person concerned in carrying the mail of the United States shall collect, receive, or carry any letter or packet, or shall cause or procure the same to be done, contrary to this act, every such offender shall forfeit and pay for every such offence a sum not exceeding fifty dollars.

It is very clear, that under these provisions the delivery of the letter and account to Philbrick by Jones was lawful, and that it was the duty of Philbrick to receive them. The stipulation that Philbrick should see the letter and account delivered to Rogers, was not illegal, and might have been lawfully executed by putting them into the first post-office at which the defendant arrived, and taking them out and delivering them at Henniker. This might have been lawfully done, if the defendant could not lawfully deliver them without putting them into the post-office.

It is manifest that Jones supposed that the letter might be lawfully carried by the defendant directly to Rogers. It was left open, in order that it might be so carried lawfully. There is no reason to suppose that any fraud upon the post-office establishment was intended.

It is certainly possible, that the arrangement between Jones and Philbrick was made with an intent to defraud the post-office.    But what is the presumption in this case?    It is manifest that one object which Jones had in view was to place the account in the hands of Rogers more speedily and more certainly than it was likely to reach him through the medium of the post-office.    This object itself was certainly lawful.    And the circumstances of the case render it highly probable that it was the true and only motive.    In point of law, then, the case stands clear of all ground to impute a fraudulent intention.    Fraud is never to be presumed. And "odiosa et inhonesta non sunt in lege præsumenda et 'in facto quod in se habet et bonum et malum magis de 'bono quam de malo præsumendum est."    10 *Coke*, 56. Bad motives are never to be imputed to any man, where fair and honest intentions are sufficient to account for his conduct.

It is, on the whole, rather probable, perhaps, that the post-office lost nothing by the agreement between Philbrick and Jones.    It is evident that Jones was anxious to have the account in the hands of Rogers in season to commence a suit upon it before the action was barred by the statute of limitations.    It might be quite uncertain, whether the account would have reached Rogers in season through the post-office.    If any accident detained the letter in the post-office at Henniker, the debt might be lost.    It is not unlikely therefore that if Philbrick had refused to see the letter delivered, Jones might have concluded to send a special messenger instead of sending the letter by the mail.    And if so, the post-office lost nothing.

The head and front of Jones' offending is, that supposing it lawful for Philbrick to carry the letter directly to Rogers, he delivered it to him to be so carried, and paid him accordingly.    If this was unlawful, both Jones and Philbrick most manifestly acted under a mistake as to the meaning of the provisions in the statute,—a mistake which has strong

claims to be considered as innocent, since it is one into which one of the ablest courts in the Union has fallen, after a most careful and deliberate examination of the subject. 1 *Pickering*, 50.

And in a case like this, where the provision in the statute which is supposed to have been violated is a mere post-office regulation, it would be very severe to hold the contract void for such a mistake by the plaintiff's agent, in favor of the defendant, whose duty it was to know the true meaning of the laws under which he acted.

The case stands, in our opinion, entirely free from all suspicion of intended fraud upon the post-office establishment in any one. And we think, that although the contract was to be performed according to the understanding of both Jones and Philbrick in a manner not allowed by the statute, still it was not void. The mode in which the contract was to be performed was not of the essence of the contract. If Philbrick had seen the letter delivered, by putting it into the post-office at which he first arrived, and taking it out at Henniker, the contract would have been substantially performed. And if in such case the post-master at Henniker had refused to let Philbrick have the letter to deliver to Rogers, it would in our opinion have been enough, if Philbrick had given notice to Rogers that there was a letter in the post-office, requiring his immediate attention. It is contended by counsel that this would not have accomplished the object of the contract, because the expense of postage would have been incurred. But this argument is built upon the assumption that to save postage was the object of the contract;—an assumption in conflict, as has been before stated, with the legal presumption arising upon the circumstances of the case. There is no reason to suppose that there was any other object in view than an immediate delivery of the letter and account to Rogers, so that a suit might be brought on the account in season.

And this circumstance is entitled to great weight. If a

man command his servant to do an act which the servant knows to be a trespass, and promises to indemnify him, the promise is illegal and void. But if in such case the servant is ignorant that the act is a trespass, the promise is valid. 17 *Johns.* 142, *Coventry* vs. *Barton ;* 4 *Cowen,* 340.

There is a recognized distinction between provisions in statutes having for their object the protection of the public, and provisions which are mere revenue regulations. Where the protection of the public is the object of the provisions, a contract made in violation of them is always void. 3 *B. & A.* 179, *Cannon* vs. *Bryce ;* 5 *B. & A.* 335, *Binley* vs. *Bignold ;* 11 *East* 300 ; 17 *Mass. R.* 258.

But when the provision is a mere revenue regulation, protected by a penalty, to render a contract in violation of it void, actual fraud must appear. Thus in *Johnson* vs. *Hudson,* 11 *East* 180, although the statute provided that every person who should deal in tobacco should, before he dealt therein, take out a license, which was to be renewed annually under a penalty of fifty pounds, yet it was held that where a person sold tobacco without a license, there being no fraud upon the revenue, the contract was not void, and that he might recover the price. The same principle was adopted in *Brown and a.* vs. *Duncan,* 10 *B. & B.* 93.

It is clear that the contract must be considered as void if made with an intent to defraud the United States.

But in a case like this, where no fraud can be supposed to have been intended, it is enough to hold that the post-rider, whose duty it was to understand the true meaning of the law under which he was acting, was subjected to a penalty without holding that his contract with the party who sent the letter was void.

My own opinion is, that the construction which these parties put upon the statute, was the true one ; and I have no doubt that such was the general understanding of the community. Of course I am of opinion, that no penalty was incurred by the defendant. But however this may be, we are all of us

of opinion that as the defendant undertook to see the letter delivered to Rogers, as this might have been lawfully done, whatever may be the true meaning of the statute, and as there is no reason to suspect that any fraud was intended by either party, the defendant was bound to execute the contract and see the letter delivered, and that he is liable for the breach of his contract.

*Judgment on the verdict.*