## SMITH *v.* WHEELER.

It is a well settled rule of law, that in declaring in assumpsit upon a contract not under seal, the consideration must be truly stated, and proved as laid.

A variance, in this respect, between the allegations and the proof, will furnish a ground of nonsuit.

A contract of sale, as follows: " W. bought of M., as mortgager, and S., as mortgagee, the stock, furniture, &c., for the sum of $700; the above is the balance this day agreed on by the parties, and the price at which said W. is to take said stock, furniture, &c., and said M. and S. have agreed to take and receive the same in full for said stock, furniture, &c." which contract was signed by said M. and S. and said W., and referred to a contract of a prior date, upon the same subject matter of sale, in which said M. and S. were expressly set up as " the party of the first part," and said W. as " the party of the second part," is evidence of a sale by M. and S. to W., and not a sale by S. alone.

Such a contract of sale will not support a count for goods sold and delivered by S. alone, inasmuch as it will not prove the consideration as laid in the declaration.

And evidence tending to show a parol promise on the part of W. to S. alone, could not alter the result, and its rejection, when offered, would not prejudice the party offering it, nor constitute any proper reason for setting aside the nonsuit ordered for the cause of said variance.

ASSUMPSIT. The declaration contained three counts, which were as follows, viz :

1. In a plea of the case for that the said Wheeler, at said Dover, on the day of the purchase of this writ, being indebted to the plaintiff in the sum of one thousand dollars for divers goods, wares and merchandize, before that time sold and delivered by the plaintiff to the defendant, at his request, in consideration thereof, then and there promised the plaintiff to pay him the said sum on demand. Yet though requested, &c.

2. Also, in a plea of the case for that the said defendant, at said Dover, on the sixteenth day of February, A. D. 1852, in consideration that the plaintiff had before that time sold and delivered to the said defendant, at his request, divers goods, wares and merchandize other than those above mentioned, promised the plaintiff to pay him so much

Smith *v.* Wheeler.

money as he reasonably deserved to have therefor, on demand; which the plaintiff avers to be the sum of eight hundred and thirty dollars and seventy cents, of all which the said defendant thereafterward, on the same day, had notice, yet though often requested, &c.

3.   Also, in a plea of the case, for that the said defendant, at said Dover, on the day of the purchase of this writ, being indebted to the plaintiff in the further sum of one thousand dollars, for so much money by the defendant before that time had and received to the plaintiff's use, in consideration thereof then and there promised the plaintiff to pay him said last mentioned sum, on demand; yet though often requested, &c.

The defendant pleaded the general issue.

The plaintiff, to prove the sale of the goods, introduced the following papers; an agreement, under the hands and seals of the parties to the action, and one S. S. Moulton, of which the following is a copy, to wit:

" It is agreed, as follows, between S. S. Moulton and Joseph H. Smith, of the first part, the former as mortgager and the latter as mortgagee of the property hereinafter named, and John B. Wheeler, of the second part, all the parties of Dover, in the county of Strafford, that the said Moulton and Smith will sell and deliver, and the said Wheeler will buy and take, at the prices hereinafter named, on the first day of January next, all the stock in trade and fixtures which may there remain on hand, now belonging to said Moulton, and being in his apothecary store in Strafford Bank building, in said Dover, including the stock, fixtures, and other property in said store, heretofore mortgaged by said Moulton to said Joseph H. Smith, and also such stock in trade as may since said mortgage have been purchased for sale in said store, by said Moulton, as the agent of said Smith, viz: all said stock in trade, at cost, subject to a deduction of five dollars, thirty-two cents.

And it is further agreed between the said parties of the first and second part, that the party which shall fail in all respects to comply with the foregoing agreement, shall forfeit and pay to the other party the sum of two hundred dollars, as settled and liquidated damages.

In witness whereof the parties have hereunto set their hands and seals, this 29th day of November, A. D. 1851.

It is further understood that if any of the stock shall be found to be in a damaged condition, a suitable deduction shall be made from the cost price thereof.

S. S. MOULTON,   (L. S.)

JOSEPH H. SMITH,   (L. S.)

JOHN B. WHEELER, (L. S.)"

Also another agreement, signed by said Moulton and Wheeler, as follows, to wit:

" It is agreed by J. B. Wheeler and S. S. Moulton, that the soda fountain, cooler, marble slab, tubes, bottles, and all the furniture and apparatus used with and constituting the soda fountain and fixtures, together with the large platform scales, and all now in the store in Strafford Bank block, shall be reserved from the bill of sale from said Moulton to said Wheeler, and deducted from articles sold to said Wheeler, and by him bought of said Moulton and Dr. Joseph H. Smith, by articles dated Nov. 29, 1851.

It is further agreed that the sum of thirty-four dollars shall be deducted from the sum total at which the stock and furniture of and in said store has been appraised by said parties, and that the balance shall be the sum at which the said Wheeler shall take and pay for said stock and fixtures.

S. S. MOULTON,

JOHN B. WHEELER.

Witness—J. W. Kingman."

Also, a bill of sale and agreement, signed by said Smith,

Moulton, and Wheeler, of which the following is a copy, to wit:

" John B. Wheeler bought of S. S. Moulton, as mortgager, and Dr. Joseph H. Smith, as mortgagee—

The stock, furniture and fixtures of and in the store now occupied by said Moulton, in No. 2, Strafford Bank block, for the sum of seven hundred and eighty dollars.

January 31st, 1852.

The above is the balance this day agreed on by the above parties, and the price at which said Wheeler is to take and pay for said stock, furniture and fixtures; and said Moulton and Smith have agreed to take and receive the same in full for said stock, furniture and fixtures.

Jos. H. Smith,

S. S. Moulton,

John B. Wheeler.

January 31st, 1852."

The plaintiff then offered to prove that it was agreed and understood among the parties that payment for said goods was to be made by said Wheeler to said Smith, he having a claim on said goods by virtue of a mortgage from said Moulton; and evidence of such agreement being objected to by the defendant, it was rejected by the court, and a nonsuit was entered, subject to the opinion of this court.

*J. H. Wiggin* and *R. Kimball,* for the plaintiff.

The oral testimony proposed by the plaintiff to be laid before the jury in this case, was not such in its character or effect as tended to contradict or vary the written contract in any of its terms or conditions, by which the several parties intended, or thought it material to their purposes, to bind themselves and each other. Its object was to show what was the amount of Smith's several interest, and what the amount of Moulton's separate interest in the goods sold to

Wheeler, and, what would naturally follow, the proportion of the price he would expect, and understand he was to pay them respectively. And for this purpose, the oral evidence offered, seems, by the whole current of authorities, to be admissible. See 2 Hill & Cowen's Notes, 1464, 1465, in notes 983, 984; 3 Starkie, 1048, 1049, 1050; *Grafton Bank* v. *Kent*, 4 N. H. Rep. 221; *Townsend* v. *Riddle*, 2 N. H. Rep. 452; 1 Starkie's Ev. 267; *Wells* v. *Gosling*, 8 Taunt. 737; *Hersom & a.* v. *Henderson*, 1 Foster's Rep. 224.

The written agreements of November 29, 1851, and January 31, 1852, describe Moulton as the mortgager, and Smith as the mortgagee of a portion of the goods which were to be sold by Smith and Moulton, or by Smith or Moulton, and bought by Wheeler; while another portion were described as the goods of Smith solely, which had been purchased by Smith since the mortgage. These two writings, which, by relation, are parts of one contract, were signed by all the parties; while the intermediate agreement, excepting from the sale the soda fountain and apparatus belonging to it, was signed by Moulton and Wheeler only. Now these expressions and distinctions of property certainly *imply* separate interests of different values in the chattels belonging to Smith and Moulton. And the presumption, both of law and common sense is, that Wheeler so understood it; while it could not be presumed that they were to receive the pay for the goods equally or jointly, as copartners.

What were the objects and ends which all the parties wished to secure in this contract? Wheeler wished to buy and get a good title to the goods at a certain price, to be paid at a certain time. Smith and Moulton wished to sell, and give Wheeler a good title to the goods for that price, so to be paid. In these stipulations all were interested. But it was of no importance to Wheeler what portion of the price Smith and Moulton were severally to receive; and between Smith and Moulton there were writings to show to

whom the money belonged. It was not, therefore, of any importance to any of the parties to insert these matters in the contract, though the language of the contract indicated their existence, and the knowledge of all the parties what they were, and their agreement to act in conformity with them.

The contract does not, in any part of it, say to whom the price shall be paid, but seems, designedly, to omit it. Now to explain these circumstances, it is very clear, both from the reason on which this rule of law is founded, and from the decisions under it, that the oral testimony should have been admitted. 3 Penn. Rep. 122; 2 Conn. Rep. 305; *Kipp* v. *Dennison*, 4 Johns. 23.

The written agreements, put in as proof by the plaintiff, are entirely consistent with, and relevant to the plaintiff's declaration. A part of the goods mentioned in the agreement were described as the sole property of the plaintiff, bought and put into the store subsequent to the mortgage by Moulton, as the plaintiff's agent; and as to the goods mortgaged, it was the same as when a pledgee sells the pledged property with the assent of the pledger, to pay the debt of the latter to the former, and the pledger signs the bill of parcels, to give the buyer a clear title. The goods were sold by the pledgee, substantially, and the plaintiff rightly avers, that the considerations of the defendant's promise were goods sold and delivered by him to the defendant, even if they had all been mortgaged.

*Christie & Kingman*, for the defendant.

I. The collateral parol agreement, that the plaintiff offered to prove, must, as the case stands, be taken to have been cotemporaneous with the written agreements, by the plaintiff put into the case, or prior thereto; and if so, the evidence was properly rejected; as a cotemporaneous or prior parol contract can never be proved, to modify a written con-

tract entered into at the same time or before, on the same subject matter.

If the parol agreement proposed to be proved was subsequent to the written contracts, it must be upon some new and sufficient consideration, which was not proposed to be shown.

II.   The action should have been debt, or covenant; the original and only contract of sale being under seal, and *inter partes;* Moulton and Smith on the one part, and Wheeler on the other.

III.   The plaintiff, in his declaration, alleges a sale of the goods to the defendant by himself alone, when his evidence proves that the sale, at least, was by Moulton and himself. Hence the proof does not support the declaration, and could not, if the evidence offered had been admitted.

WOODS, J.   In the view which we have taken of the case, it is not material to consider the question made and discussed by the counsel for the defendant, as to the form of the action.

The contract of January 31st, 1852, is relied upon by the plaintiff to show the sale and delivery of the goods, which constitute the ground of the plaintiff's action.   Whether that contract furnishes evidence of anything more than a bargain and sale, without, in fact, showing a delivery, we need not now stop to inquire, since no such question is made by the parties.

In support of the nonsuit, it is argued that the evidence offered by the plaintiff fails to prove the consideration for the alleged promise, as laid in the declaration.

It is not pretended that the evidence offered shows that the receipt of money, or of other things as money, to the use of the plaintiff, was the consideration for any promise of the defendant averred and relied upon in this case.

There can, then, be no pretence of any right to recover upon the count for money had and received.   The other two

counts in the declaration are substantially alike ; both being for goods sold and delivered by the plaintiff to the defendant before the commencement of the action.

The proof given in support of the allegation of the sale and delivery of the goods by the plaintiff to the defendant is written evidence, and is to be construed, and its meaning and purport determined by the court. The language of the contract mainly relied upon by the plaintiff is thus : " John B. Wheeler bought of S. S. Moulton, as mortgager, and Dr. Joseph H. Smith, as mortgagee, the stock, furniture and fixtures, &c., &c., for the sum of seven hundred and eighty dollars. The above is the balance this day agreed on by the parties, and the price at which said Wheeler is to take and pay for the said stock, furniture and fixtures, and said Moulton and Smith have agreed to take and receive the same in full for said stock, furniture and fixtures." The other written evidence does not vary or control the construction of this. This contract was signed by the plaintiff, and Moulton, and the defendant. The sale, then, was of the entire interest of both Moulton and Smith, and the sum to be paid was an entire sum for that entire interest, and not several sums, for the several interest of each. Such was the express contract. This was plainly a sale by Smith and Moulton to the defendant, and not a sale by Smith alone ; and this view is confirmed by the state of the title to the property at the date of the sale. Smith and Moulton had each an interest in the property, and in order to vest in the defendant a perfect and indefeasible title, it was necessary that each should convey his interest. From the character and terms of the contract, it is no more to be understood that the mortgagee's interest was intended to be conveyed, than that the mortgager's was so intended to be conveyed. According to the express language of the bill of sale, the defendant purchased of both Smith and Moulton, and, of course, both are to be considered as having sold to him, and there was, as we have seen, a necessity for a sale by both.

This view of the contract of January 31st, 1852, is further confirmed by the language of that of November 29, 1851, to which reference is made by the former, and in which Moulton and Smith are expressly set up as the party " of the first part," and Wheeler as the party " of the second part." The sale was no more made by Smith than by Moulton; it was made by both, and not by either alone. While, then, it is alleged in the declaration, in legal effect, that Smith alone sold and delivered the goods to the defendant, which sale and delivery constitute the consideration upon which the alleged promise arose, and by which alone it is to be sustained, the written proof shows that no such sale was made, and, of course, that no such consideration as is alleged existed, by which the promise can be supported.

There is, then, a variance between the allegations and the proofs in relation to the consideration for the alleged promise. But it is a well established rule of law, that in declaring in assumpsit upon a contract not under seal, the consideration must be truly stated, and proved as laid. *Moor* v. *Ross*, 7 N. H. Rep. 528; 1 Chit. Pl. 297, (8th Am. Ed.;) Ib. 296; *White* v. *Wilson*, 2 B. & Puller, 116; *Philbrick* v. *Favor*, 7 N. H. Rep. 326; *Smith* v. *Barker*, 3 Day, 312. We are not aware that the rule thus stated has any exceptions.

It is apparent, then, that the evidence offered and received at the trial, and in relation to the admissibility of which no question was made, was wholly insufficient to prove the consideration as alleged. It proved another and a different consideration. And it cannot be pretended that the evidence which was offered and rejected, would have supplied the deficiency of the other evidence in the particular specified, it having no relation to the consideration, but only to the person in whose favor the promise was made, and to whom it was to be performed. It related to the promise only. Whether the parol evidence of the promise offered

by the defendant, and rejected by the court, was competent for the purpose for which it was offered or not, is immaterial in the present state of the case. Its rejection cannot in any point of view be regarded as a legitimate ground for setting aside the nonsuit and granting a new trial. If it had been admitted, the result must have been the same; for, as we have seen, it had no relation to the consideration of the contract; and without competent proof of the consideration, as alleged, the want, or the rejection of evidence touching the promise only, could not be the occasion of any prejudice to the plaintiff. The admission of the rejected evidence could not have varied the result. We do not therefore propose to discuss the question arising upon the ruling by which it was rejected. We are, upon the whole, clearly of the opinion that there must be,

*Judgment upon the nonsuit.*